THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE
CABRALES, Defendant-Appellant.

Second District   No. 2—00—0473

Opinion filed September 19, 2001.—Rehearing denied October 18, 2001.

G. Joseph Weller and Bruce Kirkham, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Daniel N. Malato, of Cary, for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Jose Cabrales, pleaded guilty to two counts of criminal sexual assault (720 ILCS 5/12—13(a)(3) (West 2000)), and he was sentenced to consecutive sentences of 9 and 11 years' imprisonment. At a hearing on defense counsel's motion to withdraw defendant's guilty plea, defendant told the trial court that defendant wanted to file a *pro se* motion to withdraw his guilty plea. Defendant also advised the court that he wanted another attorney to represent him during these postjudgment proceedings. The trial court refused to appoint a new attorney to represent defendant, and defendant proceeded *pro se*, filed his *pro se* motion, and argued that his trial counsel was ineffective. The trial court denied defendant's motion. On appeal, defendant argues that the trial court erred when it failed to conduct a preliminary investigation to determine the factual basis for defendant's ineffective assistance of counsel claim before the trial court denied defendant's *pro se* motion to withdraw his guilty plea. We agree, and we reverse and remand.

Defendant was indicted for two counts of criminal sexual assault, one count of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1(a)(1) (West 2000)), and two counts of aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(i) (West 2000)). At the time defendant pleaded guilty to two counts of criminal sexual assault, no agreement was made regarding defendant's sentence. Defendant subsequently was sentenced to consecutive sentences of 11 and 12 years' imprisonment. Defendant moved to reconsider his sentence, arguing, among other things, that the court should have sentenced defendant to probation. The trial court refused to impose a term of probation; however, the trial court reduced defendant's sentence to consecutive sentences of 9 and 11 years' imprisonment.

Soon afterwards, Tracy Kotlarz, the assistant public defender who represented defendant during the court proceedings, moved to withdraw defendant's guilty plea. At the hearing on the motion, Kotlarz advised the court that defendant wanted to proceed *pro se*. The trial court asked defendant if he wished to proceed *pro se*, and defendant said that he would like the trial judge's clerk to help him. The court told defendant that the court's clerk could not assist defendant with the motion.

Defendant then advised the court that he would like to proceed on his own motion to withdraw his guilty plea, but the court did not have a copy of this motion. Before defendant left the courtroom to retrieve a copy of his motion, the court advised defendant that if he proceeded *pro se* defendant would have to follow the rules of procedure, which defendant may not know. In response to this statement, defendant told the court "[t]hat's probably one of the reasons why I'm asking this Court to appoint me a different attorney." The court told defendant that it was not going to appoint a new attorney to represent defendant. The court told defendant that defendant may want to have Kotlarz continue to represent him because she could review defendant's *pro se* motion and decide if the allegations in the motion were meritorious. Defendant told the court that he understood that an attorney could help him with his motion, but defendant did not want his current attorney, Kotlarz, to represent him. The trial court allowed defendant to proceed *pro se* and took a recess so that defendant could retrieve his *pro se* motion to withdraw his guilty plea.

When defendant's case was recalled after the recess, the trial court appointed Kotlarz to act as standby counsel during the hearing on defendant's *pro se* motion to withdraw his guilty plea. The trial court then reviewed defendant's motion and discovered that defendant's motion raised the issue of whether Kotlarz provided effective assistance. Because defendant argued in his motion that Kotlarz was ineffective, the trial court vacated its previous order requiring Kotlarz to act as standby counsel. In his *pro se* motion, defendant claimed that Kotlarz was ineffective because, among other things, she influenced defendant to plead guilty, never spoke with defendant before she filed her motion to withdraw defendant's guilty plea, and failed to fully explain the difference between consecutive and concurrent sentences.

When the court asked defendant to explain why defendant believed that Kotlarz was ineffective, defendant told the court that he delineated his reasons in his motion. After the court again asked defendant to explain how Kotlarz was ineffective, defendant said that he told Kotlarz he wanted to go to trial, but Kotlarz advised defendant to plead guilty because she believed defendant would lose at trial. Defendant told the court that he asked Kotlarz to contact various witnesses, and Kotlarz never interviewed those witnesses. Defendant also advised the court that he told Kotlarz that he would plead guilty only if the State would recommend probation. On the day defendant was sentenced, defendant told Kotlarz to remind the State to keep its promise, which presumably entailed recommending probation, and Kotlarz said that she would speak with the assistant State's Attorney. The State never recommended probation at the sentencing hearing.

When the State cross-examined defendant, defendant stated that he knew that the trial judge would decide what sentence to impose, and Kotlarz did inform defendant that the judge would decide whether to give defendant probation. However, Kotlarz told defendant that the State would recommend probation as long as defendant's presentence investigation report (PSI) "look[ed] real good." Defendant testified that he believed that his PSI supported a recommendation for probation. Although the probation officer who prepared the PSI did not recommend probation because of the seriousness of the offenses, the PSI did reveal that defendant had no prior misdemeanor or felony convictions and no prior involvement with drugs, alcohol, or gangs.

Kotlarz testified that she met with defendant approximately 21 times over a 4-month period. Before defendant pleaded guilty, Kotlarz spoke with defendant several times about the various sentences that the trial court could impose. Kotlarz explained to defendant what consecutive sentences meant, she told defendant that he could not receive a term of probation for a Class X felony, and she advised defendant that the court could give defendant probation and a prison term, two terms of probation, or two prison sentences. Kotlarz told defendant that the trial judge would decide what sentences to impose regardless of what sentencing recommendation the State may have made. Kotlarz advised defendant that the State did not agree to do more than review the PSI and make the appropriate recommendation, which probably would not include recommending probation. Kotlarz testified that defendant asked her at the sentencing hearing to remind the assistant State's Attorney to keep his promise, which Kotlarz believed was the assistant State's Attorney's promise to do his job and recommend an appropriate sentence.

Kotlarz also stated that she spoke with defendant about the witnesses who defendant believed could testify on his behalf. These witnesses could testify only about the relationship that defendant had with his ex-wife. None of the witnesses that defendant asked Kotlarz to speak with were directly tied to this cause, and Kotlarz did not believe that she was given the witnesses' current addresses or phone numbers.

In rebuttal, defendant stated that Kotlarz refused to interview the witnesses because Kotlarz believed that defendant should not proceed with a trial. Defendant testified that the witnesses could testify about defendant's relationship with his stepdaughters and his ex-wife because the witnesses lived with defendant at the time the offenses were committed against one of the stepdaughters.

After hearing the evidence, the trial court denied defendant's motion to withdraw his guilty plea. The court found that defendant failed

to present any defense, did not establish that it was necessary to withdraw the guilty plea in order to correct a manifest injustice, and failed to meet either prong of the test announced in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). This timely appeal followed. On appeal, defendant claims, among other things, that this cause must be remanded so that the trial court can conduct a preliminary investigation to determine whether defendant is entitled to have a new attorney appointed to represent defendant on his motion to withdraw his guilty plea.

■ There is no *per se* rule that a defendant is entitled to a new attorney if he files a *pro se* motion challenging his trial attorney's representation. *People v. Kidd*, 175 Ill. 2d 1, 44 (1996). Rather, when a defendant files a *pro se* motion arguing that his trial counsel is ineffective, the trial court should conduct a preliminary investigation to determine whether the defendant's claim is valid. *People v. Joyner*, 317 Ill. App. 3d 93, 106 (2000). During this preliminary investigation, the trial court should examine the factual basis for the defendant's claim and determine whether the defendant's claim concerns trial tactics, trial strategies, or possible neglect by the defendant's trial attorney. *People v. Jackson*, 131 Ill. App. 3d 128, 139 (1985). If the factual basis for the ineffective assistance of counsel claim shows that the defendant's trial counsel may have neglected the defendant's case, the trial court should appoint a new attorney who can make an independent evaluation of the defendant's claim and present the cause to the trial court in a detached yet adversarial manner. *Jackson*, 131 Ill. App. 3d at 139.

■ Here, the problem with which we are faced is that the trial court apparently failed to conduct a preliminary investigation into defendant's ineffective assistance of counsel claim after the trial court learned that defendant argued that his trial counsel was ineffective. In this cause the trial court refused to appoint new counsel to represent defendant in the hearing on his postjudgment motion *before* the court read the *pro se* motion and thus could not have considered the conflict issue at the time of the refusal to appoint. If the court at any time considered the conflict issue after it read the motion, the record does not reflect the nature and extent of the court's awareness of the problem nor how and why the court resolved the possible need to appoint conflict counsel. We must conclude there was no preliminary investigation because the court proceeded to a full hearing on the merits of defendant's *pro se* motion without any discussion or resolution of the need for a preliminary investigation for appointment of conflict counsel. The only matter that appears of record is the detailed hearing on the merits of defendant's motion and not a simple fact-

gathering investigation. See *Jackson*, 131 Ill. App. 3d at 139 (noting that an evaluation of a defendant's claim of ineffective assistance of trial counsel necessarily will involve *some* interchange between the defendant's trial counsel and the trial court).

The State claims that the trial court conducted a preliminary investigation, but the State fails to cite to any page in the record that supports its contention. Moreover, a careful review of the record establishes that no such preliminary investigation took place. We are appalled that the State would make such a bold and unsupported claim, and we advise the State to refrain from making similar disingenuous arguments in the future.

We also note that the State argues that any failure to conduct a preliminary investigation was harmless. A defendant is entitled to representation at every critical stage of any trial proceeding, and this right to counsel attaches when a defendant files a motion to withdraw his guilty plea. *People v. Vaughn*, 200 Ill. App. 3d 765, 771 (1990). The problem with the State's harmless error argument is that many of the alleged instances of ineffective assistance of counsel that defendant has raised occurred outside the presence of the trial court. Thus, the trial court was not in a position to evaluate defendant's claims based on facts that were within the trial court's knowledge. See *People v. Coleman*, 158 Ill. 2d 319, 351-52 (1994) (noting that the trial court was in a position to evaluate whether the defendant's trial counsel was ineffective because the trial court observed the entire trial). When the trial court here denied defendant's *pro se* motion to withdraw his guilty plea, the trial court had to rely on the presentation of defendant's case presented without the benefit of legal counsel. Defendant did not have the assistance of counsel to cross-examine Kotlarz and test the truthfulness of Kotlarz's claims.

Accordingly, we reverse the order of the circuit court of Lake County denying defendant's motion to withdraw his guilty plea, and we remand this cause for further proceedings in front of a different judge where defendant can proceed with his motion to withdraw his guilty plea pursuant to the guidelines set forth in *Jackson*, 131 Ill. App. 3d at 139.

Reversed and remanded.

HUTCHINSON, P.J., and BOWMAN, J., concur.