# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Buchanan*, 2013 IL App (2d) 120447

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DWAYNE C. BUCHANAN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0447 |
| Filed | April 25, 3013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal arising from proceedings in which the trial court conducted a *Krankel* hearing and denied defense counsel's motion to withdraw defendant's guilty plea without a clear distinction as to when the *Krankel* hearing ended, the denial of defendant's *pro se* claims of ineffectiveness of counsel was affirmed, but denial of defendant's motion to withdraw his guilty plea was vacated and the cause was remanded for the filing of a valid and timely certificate pursuant to Supreme Court Rule 604(d), an opportunity to file a new motion to withdraw the guilty plea, and a new hearing on that motion. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 10-CF-2985; the Hon. John R. Truitt, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded. |

| Counsel on Appeal | Alan D. Goldberg and Kathleen Weck, both of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Kathryn E. Kohls, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Hutchinson and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Dwayne C. Buchanan, appeals from the denial of his *pro se* "Motion to Withdraw Guilty Plea and Vacate Judgment." On appeal, he argues that the court erred in failing to ensure that he was represented by counsel as necessary during the postplea proceedings. For the reasons that follow, we affirm in part and vacate in part, and we remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3    On October 27, 2010, defendant was indicted on two counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2010)), one count of possession of firearm ammunition without possessing a firearm owner's identification (FOID) card (430 ILCS 65/2(a)(2) (West 2010)), and one count of possession of a firearm without possessing a FOID card (430 ILCS 65/2(a)(1) (West 2010)).

¶ 4    On January 31, 2011, defendant pleaded guilty to unlawful possession of a weapon by a felon, in exchange for the dismissal of the remaining charges and a sentence of 30 months' probation with 180 days in jail. The factual basis of the plea established that defendant was the owner of certain condemned property in Rockford. On September 29, 2010, Rockford police, while assisting Rockford building code enforcers with an inspection of defendant's property, found two pistols and ammunition. Defendant did not have a FOID card. Defendant had previously been convicted of a felony in Illinois. The court admonished defendant about the charge and the sentencing range. The court also admonished him about the rights he would give up by pleading guilty. Defendant stated that he understood. Defendant agreed that he was pleading guilty of his own free will. The court accepted the factual basis of the plea and found defendant's plea to be knowing and voluntary. The court sentenced defendant in accordance with the parties' agreement. The court then advised defendant of his right to appeal.

¶ 5 Defense counsel filed a timely motion to withdraw the plea but did not file a certificate under Illinois Supreme Court Rule 604(d) (eff. July 1, 2006) until that motion had been denied. On appeal, we found that, because counsel's certificate did not precede the hearing on defendant's motion, counsel's certificate was untimely and invalid. *People v. Buchanan*, 2011 IL App (2d) 110733-U, ¶ 4. We remanded for (1) the filing of a timely and valid Rule 604(d) certificate; (2) the opportunity to file a new motion to withdraw the plea; and (3) a new motion hearing. *Id.*

¶ 6 On remand, on December 22, 2011, defense counsel filed an amended motion to withdraw the guilty plea. The motion alleged that defendant did not knowingly, intelligently, and voluntarily waive his right to a jury trial, that defendant did not fully comprehend the court's admonishments, and that "defendant feels that he was coerced into entering the plea of guilty." On that same day, counsel filed the requisite Rule 604(d) certificate.

¶ 7 On January 27, 2012, the parties appeared for a hearing on the amended motion. Defense counsel informed the court that "[defendant] is now stating that he needs to speak to [defense counsel] some more and [defendant] wants to maybe add more to the Amended Motion." The court continued the matter to February 6, 2012, for a hearing.

¶ 8 On February 6, 2012, at the outset of the proceedings, the following occurred:

"[DEFENSE COUNSEL]: *** [Defendant] is requesting, um, that conflicts counsel be appointed to the case to argue the Motion to Vacate Plea. He believes that he is going to have to call me as a witness to testify. If you look at the amended motion, allegation No. 2 is that the defendant feels that he was coerced into entering into the plea of guilty; and I believe he is stating that I did something to coerce him into entering into his plea of guilty.

THE COURT: I think that can be handled by a *Krankel* inquiry where he simply, uh, states his position and you are given the opportunity to respond; and I–and, uh–(pauses)–and I don't think it's–it's necessary unless–(pauses)–if the Court believes there was either neglect, uh–(pauses)–prejudice, uh–(pauses)–that the Court isn't automatically required to appoint other counsel when, uh, he's simply making an allegation.

[DEFENSE COUNSEL]: Correct, Your Honor.

THE COURT: I can hear what he has to say. I can hear what you have to say in response. I can rely upon the Court's recollection, the report of proceedings from that day; and, uh, he's not automatically entitled to appointment of other counsel simply because he's making that allegation.

[DEFENSE COUNSEL]: That–that is correct, Your Honor. He–I advised him that I would make that motion for him. That is what he wanted to talk to me about after the last court date.

THE COURT: All right. That's–that's denied at this point in time.

THE DEFENDANT: Excuse me, Your Honor. I represent myself.

THE COURT: It can be handled by–go ahead.

THE DEFENDANT: I represent myself here. I don't want him to represent me.

-3-

THE COURT: Well, if you have been in the room and listening to what I am saying, I'm not appointing other counsel at this time. If I find that your argument is without merit, uh–(pauses)–either that it's without merit or, uh, matters that the, uh, Court can take into consideration because I'm the one who took the guilty plea, I'm not required to appoint other counsel at this point.

THE DEFENDANT: I understand.

THE COURT: Only in the event that the Court finds, uh, neglect or, uh–(pauses)–or actual prejudice, then we'll cross that, but we're not there; and the Court is not appointing other counsel.

THE DEFENDANT: All right. I can still represent myself, right?

THE COURT: Pardon me?

THE DEFENDANT: I can still represent myself?

THE COURT: Sure you can.

THE DEFENDANT: All right. I'll represent myself then. I don't want him to represent me.

THE COURT: Okay. Are you ready to argue your motion then?

THE DEFENDANT: No. I want to amend my motion, and then I'll argue what I'm putting against him on that motion. I'll amend it myself then.

THE COURT: I'm sorry? What?

THE DEFENDANT: Well, he–I haven't even seen the motion, first of all.

[DEFENSE COUNSEL]: Your Honor, I did show him the motion. Um–(pauses)–I think it was last week we were in court.

THE DEFENDANT: This is not–this is not everything that I want–what is down here. I don't want anything that's come up before–[(]unintelligible)–

THE COURT REPORTER: (Interjecting) I'm sorry. You're going to have to slow down and speak up.

THE DEFENDANT: Okay. Like the judge told me before, by me not speaking up before, a lot of stuff that I want to say was waived. I don't want to waive anything. I'm going to speak up from now on. And I'm not–this is not enough stuff that I want to–that I want to accuse him of doing. I just want to do the things I want here; and I want to amend my motion further, and I'll do it myself if you won't appoint me a lawyer. So I need time to do that, anyway.

THE COURT: How soon can you have it on file?"

Thereafter, the court and defendant discussed the amount of time that defendant needed to prepare his amended motion. The parties agreed on a hearing date, and the court advised defendant to make sure that he provided a copy of the amended motion to the court and to the State.

¶ 9 On February 21, 2012, defendant filed a *pro se* "Motion to Withdraw Guilty Plea and Vacate Judgment." In the motion, defendant made numerous allegations concerning defense counsel's ineffectiveness. He also asked that new counsel be appointed to represent him.

¶ 10    On March 16, 2012, defendant appeared *pro se* for the hearing on his motion. Defense counsel and the State were also present. At the outset of the hearing, the State pointed out that defendant, in his motion, had requested that new counsel be appointed. The court responded that defendant is "not automatically entitled to that." The court then questioned defendant about his allegations concerning defense counsel. Defendant began by arguing that the police had searched his house without a search warrant and that defense counsel had told him erroneously that the police did not need a search warrant. Defendant also argued that he did not consent to a search. According to defendant, although he had pictures showing that the door to his property had been kicked open, defense counsel failed to present them. The court asked defendant why he had pleaded guilty. Defendant argued that he "had no choice but to go along with [defense counsel]." He stated: "If he ain't gonna research like he told me and help me, then I got to go along with whatever." The court then asked defense counsel to respond. In response, counsel told the court that he did file a motion to suppress evidence but that, on the day the motion had been set for a hearing, defendant told counsel that he wanted to plead guilty. Counsel stated that he had subpoenaed three building inspectors and that they were present and ready for the hearing. Counsel stated that he was prepared to proceed on the motion before defendant decided to plead guilty. Thereafter the court stated that it was denying defendant's motion, and the following colloquy occurred:

"[DEFENDANT]: You mean to tell me, I don't have the right to even argue. All mine is denied, just that easy?

THE COURT: You just did argue. I asked you what did you believe that [defense counsel] did wrong, and then you had the chance to speak to that; did you not?

[DEFENDANT]: I didn't speak to everything. I'm just starting to talk.

THE COURT: You're just starting. Let's continue, then. I've got all kinds of time. What else do you believe he did wrong?

[DEFENDANT]: Since we goin' to put this on the record, can he take the stand and I question him?

THE COURT: This is called a *Krankel* hearing.

[DEFENDANT]: I'm asking for an attorney. I don't know what you're talking about.

THE COURT: That's denied. A *Krankel* hearing is where you get the chance to tell me what you believe [defense counsel] did wrong. I then hear from [defense counsel] in response, and then I decide whether there's merit to the motion that would require the Court to appoint counsel. It's that plain and simple."

¶ 11    Defendant again argued that defense counsel "should have filed a motion to dismiss," based on the fact that "they kicked [his] door in with no warrant." He also argued that the officers claimed to have "found some look-alike substance" but that "[y]ou have to have intent to try to sell it." He said that he was wrongly sent to jail "for a look-alike substance that [he] never got an indictment for." When the court reminded defendant that he pleaded guilty to unlawful possession of a weapon by a felon, defendant explained that this was why a motion to dismiss should have been filed. Defendant also argued that defense counsel was ineffective for failing to "call Al up to court, the man that was in the house when they went in there." He also argued that, although the pistol was found in a room that contained his

mail, there was also mail belonging to other individuals, and defense counsel failed to "[go] and [get] this stuff."

¶ 12        The court again allowed defense counsel to respond. Counsel explained that he did not file a motion to dismiss because it would not have been proper; instead, he filed a motion to suppress evidence. He went to the jail and spoke with defendant about the concerns defendant was now raising. Counsel showed defendant a copy of the building code that the building inspector asserted as the basis of his entry into the building. He discussed with defendant the subject of the mail that was found along with the pistol. He did not recall hearing of other mail in the room. Counsel stated that he "talked to all the witnesses [he] felt was necessary." He also stated that, according to the police report, defendant was present at the home and allowed the officers to enter. Counsel stated that "[a]ll of this would have come out at the hearing." Counsel stated that he was ready for a hearing and that he had the witnesses ready when defendant decided to plead guilty. In response to the court's inquiry, counsel stated that he had met with defendant "no less than four times when he was in custody." Defendant argued that, according to the police report, "Al–whatever his last name was–opened the door." He claimed that he arrived after the officers were already there.

¶ 13        The court then stated:

> "I've read the transcript from the date that you pled guilty, I've heard your explanations as to the manner in which you believe [defense counsel] was ineffective, I've heard [defense counsel's] responses to your allegations that he was ineffective, and finding no merit to the argument that he was ineffective, and that furthermore, you pled guilty of your own free and voluntary will."

When the court noted that it had questioned defendant "at length" as to whether he was "doing this of [his] own free and voluntary will," defendant interjected, "It wasn't voluntary." At that point, the court reviewed the transcript of the plea hearing with defendant, which established that defendant's plea was voluntary.

¶ 14        The court allowed defendant to argue further. Defendant claimed that, when he pleaded guilty, he was on probation in Ogle County and part of his plea agreement was that "they would not or try to revoke [his] probation." However, according to defendant, as soon as he pleaded guilty, "they said they violated it." In response to the court's inquiry, defense counsel and the State explained that, although the State had agreed not to communicate with Ogle County concerning defendant's plea, it was explained to defendant that neither the State nor defense counsel had any control over whether Ogle County would choose to revoke defendant's probation. Defense counsel further explained that he had tried to speak with the prosecutor in Ogle County but the prosecutor would not speak to him because he was not the attorney of record on the Ogle County case.

¶ 15        Thereafter, the court denied defendant's motion. The court appointed new counsel to represent defendant on a pending petition to revoke his probation in this case.

¶ 16        Defendant timely appealed.

¶ 17                                II. ANALYSIS

¶ 18        Defendant argues that the trial court failed to ensure that he was represented by counsel as necessary during the postplea proceedings. In response, the State argues that, because the court properly inquired, under *People v. Krankel*, 102 Ill. 2d 181, 189 (1984), as to the basis of defendant's claims alleging ineffective assistance of counsel and determined that defendant's claims were without merit, defendant was not denied his right to counsel.

¶ 19        When a defendant brings a *pro se* posttrial claim that defense counsel was ineffective, the trial court must inquire adequately into the claim and, under certain circumstances, must appoint new counsel to argue the claim. *Krankel*, 102 Ill. 2d at 187-89; see *People v. Taylor*, 237 Ill. 2d 68, 75 (2010); *People v. Pence*, 387 Ill. App. 3d 989, 994 (2009). New counsel is not automatically required merely because the defendant presents a *pro se* posttrial claim that his counsel was ineffective. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). The trial court must first examine the factual basis of the claim. In *Moore*, the supreme court listed three ways in which the trial court may conduct its evaluation: (1) the court may ask defense counsel about the defendant's claim and allow counsel to "answer questions and explain the facts and circumstances surrounding" the claim; (2) the court may have a "brief discussion" with the defendant about his claim; or (3) the court may base its evaluation "on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* at 78-79. If the defendant's allegations show possible neglect of the case, the court should appoint new counsel to argue the defendant's claim. *Taylor*, 237 Ill. 2d at 75; *Pence*, 387 Ill. App. 3d at 994. However, if the court concludes that the defendant's claim lacks merit or pertains only to matters of trial strategy, the court may deny the claim. *Taylor*, 237 Ill. 2d at 75; *Pence*, 387 Ill. App. 3d at 994. If the court fails to conduct the necessary preliminary examination as to the factual basis of the defendant's allegations, the case must be remanded for the limited purpose of allowing the court to do so. *People v. Serio*, 357 Ill. App. 3d 806, 819 (2005).

¶ 20        Relying on our decision in *People v. Cabrales*, 325 Ill. App. 3d 1 (2001), defendant argues that the trial court erred in not conducting the *Krankel* inquiry when the court first learned that defendant raised claims that his counsel was ineffective and in allowing defendant to instead proceed *pro se*. In *Cabrales*, the defendant pleaded guilty to two counts of sexual assault and was sentenced to prison. *Id.* at 2. Defense counsel filed a motion to withdraw the defendant's guilty plea. *Id.* At the hearing on the motion, the defendant told the trial court that he wanted to file a *pro se* motion to withdraw his plea and that he wanted another attorney to represent him during the postjudgment proceedings. *Id.* The defendant had already prepared a motion but did not have it with him. *Id.* at 3. The court told the defendant that it was not going to appoint another attorney and that the defendant might want to have his current attorney review the motion for him. *Id.* The defendant told the court that he did not want his current attorney to represent him. *Id.* The court allowed the defendant to proceed *pro se* and took a recess so that the defendant could get his motion. *Id.* When the case was recalled, the court appointed the defendant's attorney as standby counsel. *Id.* When the court reviewed the *pro se* motion and discovered that the defendant made allegations that his counsel was ineffective, the court vacated its prior order requiring defense counsel to act as standby counsel. *Id.* Thereafter, the court conducted a hearing on the defendant's motion.

-7-

*Id.* At the hearing, the defendant explained his allegations of ineffectiveness, the State cross-examined the defendant, defense counsel testified, and the defendant testified in rebuttal. *Id.* at 3-4. After hearing the evidence, the court denied the defendant's motion. *Id.* at 4. The defendant timely appealed. *Id.* at 5.

¶ 21 On appeal, the defendant argued that the case should be remanded so that the trial court could conduct a preliminary investigation to determine whether the defendant was entitled to have a new attorney appointed to represent him on his *pro se* motion to withdraw his plea. *Id.* We agreed. We stated:

"In this cause the trial court refused to appoint new counsel to represent defendant in the hearing on his postjudgment motion *before* the court read the *pro se* motion and thus could not have considered the conflict issue at the time of the refusal to appoint. If the court at any time considered the conflict issue after it read the motion, the record does not reflect the nature and extent of the court's awareness of the problem nor how and why the court resolved the possible need to appoint conflict counsel. We must conclude there was no preliminary investigation because the court proceeded to a full hearing on the merits of defendant's *pro se* motion without any discussion or resolution of the need for a preliminary investigation for appointment of conflict counsel. The only matter that appears on the record is the detailed hearing on the merits of defendant's motion and not a simple fact gathering investigation." (Emphasis in original.) *Id.* at 5-6.

Defendant argues that, here, as in *Cabrales*, the court failed to ensure that he was represented by counsel at the postplea hearing where it allowed defendant to proceed *pro se* on his motion to withdraw his guilty plea, without first determining whether conflict counsel should have been appointed and without obtaining a valid waiver of counsel.

¶ 22 Although this case is somewhat similar to *Cabrales*, the State argues that this case is distinguishable because here the court conducted a *Krankel* hearing and determined that there was no basis to defendant's claims. We agree that this is an important distinction. In the present case, unlike in *Cabrales*, the court was well aware of the need to inquire into defendant's claims. When defense counsel first informed the court, at the February 6, 2012, hearing, that defendant wished to have conflict counsel appointed, the court immediately and correctly explained that defendant was not entitled to conflict counsel unless an inquiry under *Krankel* established otherwise. The court then went on to conduct that inquiry, without conducting "a full hearing on the merits of defendant's *pro se* motion." *Id.* at 5.

¶ 23 Nevertheless, defendant claims that, because the court did not conduct the *Krankel* inquiry as soon as it learned that defendant wished to argue defense counsel's ineffectiveness, it left defendant to proceed *pro se* without a valid waiver of counsel. Admittedly, this case is somewhat complicated by the fact that, when defendant first stated that he did not want defense counsel to represent him and asked if he could represent himself, the court quickly stated, "[s]ure, you can," and, thereafter, allowed defendant to file a *pro se* "Motion to Withdraw Guilty Plea and Vacate Judgment." We agree that the better course would have been for the court to conduct the *Krankel* inquiry immediately upon learning that defendant wished to raise allegations of defense counsel's ineffectiveness. However, it is clear that the court did not treat defendant's request to represent himself as a complete waiver

of counsel. Although the court allowed defendant to proceed *pro se*, it did so only to allow defendant to put in writing his claims concerning counsel's ineffectiveness. A defendant may do so without waiving counsel for other purposes. See *People v. Milton*, 354 Ill. App. 3d 283, 292 (2004) (although, generally, a trial court may not consider *pro se* motions filed by a defendant who is represented by counsel, represented defendants are allowed to raise *pro se* claims of ineffective assistance of counsel). Thus, we find no error in the court's allowing defendant to file a *pro se* motion for that purpose.

¶ 24    We turn now to the propriety of the hearing that took place on that *pro se* motion. Defendant argues that the hearing "was a disorganized amalgamation of *Krankel* inquiry and post-plea motion hearing." There is some merit to defendant's argument. Certainly, the court adequately examined defendant's allegations of ineffectiveness. The court questioned defendant at length concerning his claims and allowed defense counsel to explain the facts and circumstances around defendant's claims. See *Moore*, 207 Ill. 2d at 78-79. Thus, as already noted, here, unlike in *Cabrales*, when defendant filed his *pro se* motion, the court was well aware of the *Krankel* requirements, conducted the requisite hearing, and determined that there was no basis to defendant's claims. However, without any reference to the motion to withdraw defendant's guilty plea that had been previously filed by counsel, the court denied not only defendant's *pro se* motion but also, effectively, counsel's motion to withdraw the plea. It is not clear where the *Krankel* hearing ended and the rest of the hearing began. Upon concluding that defendant's *pro se* claims of ineffectiveness were without merit, the court should have clearly informed defendant that he was not entitled to conflict counsel and, at that point, allowed counsel to argue any remaining issues (or taken a proper waiver of counsel).

¶ 25    When we remanded the case, defense counsel filed an amended motion to withdraw the guilty plea. On the same day that counsel filed the amended motion, counsel filed the requisite Rule 604(d) certificate. The motion alleged that defendant did not knowingly, intelligently, and voluntarily waive his right to a jury trial, that defendant did not fully comprehend the court's admonishments, and that "defendant feels that he was coerced into entering the plea of guilty." To the extent that, upon the conclusion of the *Krankel* inquiry, the court did not allow counsel to argue the merits of the motion, defendant was indeed denied his right to counsel. Thus, remand is warranted so that counsel can argue the merits of the motion.

¶ 26    Defendant asks that, on remand, he be given the opportunity to file a new motion to withdraw his plea with the assistance of counsel before a new judge. Although the appointment of new counsel was not warranted under *Krankel*, we nevertheless note that, at the conclusion of the hearing, the trial court appointed new counsel to represent defendant on another matter. That counsel or other new counsel may represent defendant on remand. Counsel must file a new Rule 604(d) certificate. See *People v. Herrera*, 2012 IL App (2d) 110009, ¶ 11 ("Without a compliant certificate filed by the attorney who represents the defendant at his or her postplea hearing, the court has no assurance that the attorney *presenting* the motion has a grasp of the record and the defendant's contentions of error." (Emphasis added.)). Additionally, as provided by Rule 604(d), counsel is free to file an amended motion. Finally, although we acknowledge that a reviewing court has the authority

to assign a case to a new judge on remand if there are circumstances that call into question a judge's impartiality (*Eychaner v. Gross*, 202 Ill. 2d 228, 279 (2002)), we do not find, and defendant does not suggest, that any such circumstances exist.

¶ 27 Accordingly, we affirm the trial court's denial of defendant's *pro se* claims of ineffectiveness, but we vacate the March 6, 2012, order to the extent that it otherwise operated as a denial of defendant's motion to withdraw his guilty plea. We remand the cause for (1) the filing of a timely and valid Rule 604(d) certificate; (2) the opportunity to file a new motion to withdraw the guilty plea; and (3) a new motion hearing.

¶ 28         III. CONCLUSION

¶ 29 The judgment of the circuit court of Winnebago County is affirmed in part and vacated in part, and the cause is remanded.

¶ 30 Affirmed in part and vacated in part; cause remanded.