NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190890-U

NO. 4-19-0890

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 8, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| THOMAS W. KRIGBAUM, | ) | No. 19CF484 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justice Turner concurred in the judgment.
Presiding Justice Knecht dissented.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, holding that (1) the trial court conducted an
adequate preliminary *Krankel* inquiry and (2) defendant was not deprived of his
right to counsel during postplea proceedings.

¶ 2     Defendant, Thomas W. Krigbaum, appeals from his conviction and sentence for

aggravated kidnapping. On appeal, defendant argues (1) the trial court failed to conduct a proper

inquiry into his *pro se* postplea claims of ineffective assistance of counsel pursuant to *People v.*

*Krankel*, 102 Ill. 2d 181 (1984), and (2) defendant was effectively deprived of his right to

counsel during postplea proceedings. We affirm.

¶ 3                              I. BACKGROUND

¶ 4     The State charged defendant with aggravated kidnapping (720 ILCS 5/10-2(a)(4)

(West 2018)), attempted aggravated kidnapping (*id.* § 8-4(a), 10-2(a)(4)), aggravated battery (*id.* § 12-3.05(f)(1)), violation of an order of protection (*id.* § 12-3.4(a)), and driving while his license was revoked (625 ILCS 5/6-303(a) (West 2018)). The trial court appointed the public defender's office to represent defendant.

¶ 5 Defendant entered a negotiated plea agreement in which he pled guilty to aggravated kidnapping in exchange for the State's agreement to dismiss the remaining charges and cap its sentencing recommendation at 24 years' imprisonment. The State also agreed to dismiss pending charges against defendant that were filed under two separate case numbers.

¶ 6 Before accepting defendant's plea, the court admonished defendant as to the aggravated kidnapping charge, the possible penalties, and the rights defendant would be giving up. Defendant indicated he understood. The court asked defendant if his decision to plead guilty was voluntary and of his own free will. Defendant indicated it was. The court asked defendant if he was promised anything outside the plea agreement in exchange for pleading guilty. Defendant indicated he was not. The court asked defendant if he was forced or threatened to plead guilty. Defendant indicated he was not.

¶ 7 As a factual basis for the plea, the State indicated if the case were taken to trial, it would show that sheriff's deputies responded to the scene of the incident. They made contact with a witness who had heard a woman yelling for help while he was in his residence. The witness looked out his window and saw defendant on top of the woman. Defendant had a knife. Defendant told the woman he would stab her if she did not get into his car. The witness and other neighbors were able to pull defendant away from the victim and take the knife from him.

¶ 8 The State would also show that officers spoke with the victim. The victim told them she had been in a prior dating relationship with defendant. She did not think defendant

knew where she lived. She encountered defendant outside the doorway to her home. She did not initially recognize defendant because he was wearing a wig. She screamed for help. Defendant grabbed the victim's mouth and knocked her over a garbage can. Defendant then told her that he wanted to talk, and he moved his hand away from her mouth. He then walked the victim to the passenger side of his car. The victim attempted to call 911, and defendant pushed her into the car. The victim opened the door and tried to run and scream for help. Defendant grabbed her by the hair and threw her back into the car. She escaped, and defendant chased her. He climbed on top of her and wielded a knife. The victim's hand was cut during the struggle. The victim also told officers that her hair had been "cut or ripped."

¶ 9        The defense agreed the State had witnesses who would testify substantially as indicated, and the court accepted the plea.

¶ 10        At the sentencing hearing, the trial court received a presentence investigation report, the State presented evidence in aggravation, and the victim read a victim impact statement. The defense presented the following evidence in mitigation: (1) expert testimony from a physician who specialized in forensic psychiatry and psychoanalysis and who interviewed defendant, (2) a curriculum vitae for the psychiatrist who interviewed defendant, (3) testimony from four character witnesses, (4) four letters in support of defendant, and (5) two attendance sheets listing defendant's attendance at various programs while incarcerated. Defendant made a statement in allocution. The court sentenced defendant to 24 years' imprisonment and dismissed the other pending charges.

¶ 11        Defendant, through counsel, filed a motion to withdraw the guilty plea and a motion to reconsider the sentence.

¶ 12        The motion to withdraw the guilty plea alleged defendant sought to withdraw his

plea on the following bases: (1) defendant believed he could have achieved an acquittal at trial, (2) defendant felt he was forced to plead guilty, and (3) counsel provided ineffective assistance. Regarding the claim of ineffective assistance of counsel, the motion stated "defendant asserts" there was a " 'corroborated' effort" between defense counsel and the State to get defendant to plead guilty, "[c]ounsel gave 'nothing but terrible advice,' " and "[c]ounsel did a 'bad job' at the sentencing hearing."

¶ 13　　　　On the same day defense counsel filed the postplea motions, she also filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). The certificate stated counsel had (1) consulted with defendant in person, by mail, by phone, or by electronic means to ascertain his contentions of error in the entry of the guilty plea and the sentence; (2) examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and (3) made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings.

¶ 14　　　　The trial court held a hearing on defendant's postplea motions. At the beginning of the hearing, defense counsel informed the court defendant had alleged ineffective assistance in the motion to withdraw the guilty plea and, therefore, "the first issue to take up would be whether or not alternate counsel needs to be appointed for the purposes of this motion." The court stated it would consider defendant's allegations of ineffective assistance of counsel. The court summarized the allegations of ineffective assistance of counsel set forth in the motion to withdraw the guilty plea and asked defendant what advice he received from counsel that he believed was "terrible."

¶ 15　　　　Defendant stated counsel only ever discussed pleading guilty and never discussed a defense or a way to proceed to trial. Defendant was "ready to go to trial on some things" on the

day he pled guilty. Defendant never told counsel he wanted to plead guilty, but he was put "under the gun right there in the courtroom right before that to plead guilty to this other charge." Defendant further stated: "Also, on the sentencing hearing[,] witnesses were told the wrong date. The case was continued, and people that were going to show up on my behalf showed up on the wrong day and were unable to take off other days from work to come and testify for me." Defendant also stated there was a "lack of communication" between him and the public defender's office. Defendant said he had to leave several messages and send a postcard to the office to get a response.

¶ 16     The trial court asked defendant whether he was contending that he was prepared to go to trial on the two dismissed cases at the time of his plea. Defendant indicated he was. The court asked defendant whether he wanted a trial in this case. Defendant indicated he did. The court asked defendant whether he believed it was likely he would have been acquitted if there was a trial. Defendant indicated he did. The court then made the following ruling:

> "Given the factual basis and the evidence that was presented at the time of the plea, [defendant], there's no way in hell you would have been—you'd been acquitted, and had you been convicted I would have given you 30 years and made it consecutive to anything else I could have made it. So, a 24-year deal was a gift.
>
> Now, your attorneys saw that this case was one that very likely wasn't going to be successful had you gone to trial, and they cut a deal for you that again, quite frankly, was—was a gift. The fact that you wanted to go to trial in some of the other cases, well, it's up to the State to decide which cases they wanted to try first, and to the State's credit this was a very serious case and they wanted to have it tried first so this case was cued up for trial and again the evidence against you

was so overwhelming the chances of being acquitted were slim and none.

The fact that you got a 24-year sentence based upon everything that was presented was an incredibly good deal. The fact that you think you got bad advice from your lawyers and given what's presented here is not well taken.

The other issue as to the motion to withdraw guilty plea and vacate judgment, you felt that you were forced to plead guilty, but again you were given the option and your attorneys were prepared to try this case. And again had this been tried the likelihood of your acquittal was slim and none, and the sentence you would have received from this [c]ourt based upon the evidence that was presented in the factual basis and would have very likely been presented at the trial would have indicated a minimum sentence of 30 years and then any consecutive sentences that the [c]ourt could have imposed and then all of this followed by a period of mandatory supervised release of three years.

So, given everything that's been presented I believe the motion to withdraw the guilty plea and vacate the judgment is not well taken. It is denied."

¶ 17        Defense counsel advised the trial court she had also filed a motion to reconsider the sentence. The court denied that motion. This appeal followed.

¶ 18                              II. ANALYSIS

¶ 19                        A. Preliminary *Krankel* Inquiry

¶ 20        Defendant argues the trial court conducted an improper preliminary *Krankel* inquiry into his *pro se* postplea claims of ineffective assistance of counsel. First, defendant argues the inquiry was inadequate because the court failed to inquire into the factual bases for all his claims. Defendant also argues that the court used an incorrect legal standard in denying his

- 6 -

allegations of ineffective assistance of counsel by requiring defendant to show that he would have been acquitted at trial or received a lesser sentence. We address each argument in turn.

¶ 21                                        1. *Adequacy of the Preliminary* Krankel *Inquiry*

¶ 22        We first address defendant's claim that the trial court failed to conduct an adequate preliminary *Krankel* inquiry into all of defendant's allegations of ineffective assistance of counsel. Specifically, defendant contends that the court should have asked defendant which witnesses would have been able to testify at his sentencing hearing if counsel had not given them the wrong date and what the substance of their testimonies would have been.

¶ 23        Under the common law procedure developed pursuant to *Krankel* and its progeny, the appointment of new counsel is not automatically required when a defendant makes a *pro se* postplea claim of ineffective assistance of counsel. *People v. Ayres*, 2017 IL 120071, ¶ 11. Rather, the trial court must "conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel." *People v. Moore*, 207 Ill. 2d 68, 79 (2003). If the court determines the claim lacks merit or pertains only to trial strategy, the court may deny the *pro se* motion without appointing new counsel. *Id.* at 78. However, if the inquiry reveals possible neglect of the case, the court should appoint new counsel to independently investigate the claims and represent the defendant at a separate hearing. *Id.*

¶ 24        The common law procedure set forth in *Krankel* and its progeny is not triggered when counsel raises his or her own ineffectiveness. *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 17. However, the *Krankel* procedure is necessary where counsel merely informs the trial court of a defendant's allegation of ineffective assistance of counsel. See *id.*

- 7 -

¶ 25       We assume for purposes of this appeal that the allegations of ineffective assistance of counsel set forth in the motion to withdraw the guilty plea filed by counsel are properly classified as *pro se* allegations such that the *Krankel* procedure applies. The motion to withdraw the guilty plea stated defendant was asserting the allegations of ineffective assistance of counsel, and defense counsel told the court that it needed to conduct a *Krankel* inquiry on those allegations. Neither party disputes on appeal that the allegations of ineffective assistance of counsel set forth in the motion to withdraw the guilty plea are *pro se* allegations. Accordingly, we turn to the question of whether the preliminary *Krankel* inquiry in this case was adequate.

¶ 26       "The trial court must conduct an adequate inquiry into allegations of ineffective assistance of counsel, that is, inquiry sufficient to determine the factual basis of the claim." *People v. Banks*, 237 Ill. 2d 154, 213 (2010). In conducting this inquiry, the court may ask defense counsel about the defendant's allegations, discuss the allegations with defendant, consider its knowledge of defense counsel's performance, and consider whether the defendant's allegations are insufficient on their face. *Ayres*, 2017 IL 120071, ¶ 12. The court may consider both the factual and legal merits of the defendant's claims. *People v. Roddis*, 2020 IL 124352, ¶ 61. "The purpose of the preliminary inquiry is to ascertain the underlying factual basis for the ineffective assistance claim and to afford a defendant an opportunity to explain and support his claim." *Ayres*, 2017 IL 120071, ¶ 24. "The issue of whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*." *Roddis*, 2020 IL 124352, ¶ 33.

¶ 27       Here, the trial court conducted a minimally sufficient preliminary *Krankel* inquiry. The court gave defendant the opportunity to explain his claims of ineffective assistance of counsel. After defendant discussed his claims, the court found, based on the evidence

described in the factual basis for the plea, there was "no way in hell" defendant would have been acquitted had he gone to trial. The court further found, based on the nature and circumstances of the offense as described in the factual basis, it would have imposed a sentence greater than 24 years' imprisonment if defendant had been convicted following a trial. This amounted to an implicit finding that defendant's claims lacked merit because defendant could not show prejudice due to the strength of the evidence against him. Pursuant to our supreme court's holding in *Roddis*, it was permissible for the court to consider the legal merits of the claims during the preliminary *Krankel* inquiry. See *Roddis*, 2020 IL 124352, ¶ 61.

¶ 28　　　　In addition, specifically regarding defendant's postplea claim that "[c]ounsel did a 'bad job' at the sentencing hearing," which is the focus of his *Krankel* argument here, the trial court's inquiry *did* reveal the claim's basis. Defendant stated that plea counsel gave his witnesses an incorrect date for the sentencing hearing, and they could not attend on the date the hearing was actually held. Defendant suggests the court was required to engage in an *additional* level of inquiry, to determine who the witnesses were and what they would have testified to at the hearing. However, he fails to provide any compelling authority supporting his position. Here, after the court inquired into the basis of defendant's claim, it stated the "24-year deal was a gift," and had it not been for the plea agreement, it would have sentenced him to at least 30 years. We find that regarding defendant's specific claim as to the sentencing hearing witnesses, the court conducted an "inquiry sufficient to determine the factual basis of the claim." *Banks*, 237 Ill. 2d at 213.

¶ 29　　　　　　　　　　2. *Incorrect Legal Standard*

¶ 30　　　　Defendant next argues the trial court used an incorrect legal standard during the preliminary *Krankel* inquiry. Defendant notes the court stated there was "no way in hell"

defendant would have been acquitted following a trial, and it would have imposed a 30-year sentence and made it consecutive to any other eligible sentence if defendant had been convicted after a trial. Defendant contends these comments indicate the court improperly required him to show he actually would have been acquitted at trial or would have received a lesser sentence. Defendant argues the court should have instead considered whether his claims showed counsel possibly neglected his case.

¶ 31　　　　We disagree with defendant's interpretation of the trial court's comments. The court did not indicate defendant was required to show he would have ultimately been acquitted or would have received a lesser sentence in order to receive the appointment of new counsel. Rather, the court found, based on the strength of the State's evidence and nature of the offense, defendant could not make such a showing. Stated another way, the court found defendant could not show prejudice. Again, it was permissible for the court to consider the legal merits of defendant's claims at the preliminary inquiry. See *Roddis*, 2020 IL 124352, ¶ 61.

¶ 32　　　　　　　　　　　　　B. Right to Counsel

¶ 33　　　　Defendant next argues he was effectively deprived of his right to counsel during postplea proceedings when (1) counsel filed a Rule 604(d) certificate that was rebutted by the record and (2) the trial court dismissed defendant's motion to withdraw his guilty plea at a combined *Krankel* hearing and a hearing on the merits of the of the motion without obtaining a waiver of counsel. We address each argument in turn.

¶ 34　　　　　　　　　　　　1. *Rule 604(d) Certificate*

¶ 35　　　　Defendant argues he was effectively deprived of his right to counsel during postplea proceedings because counsel failed to fulfill her obligations under Rule 604(d). Defendant contends that, although counsel filed a facially valid Rule 604(d) certificate, the

- 10 -

record shows she failed to comply with the rule. Specifically, defendant contends the record shows counsel failed to amend his postplea motions to include the claim that his witnesses were not able to attend the sentencing hearing because she told them the wrong date. Defendant also argues his comments during the preliminary *Krankel* inquiry about the lack of communication from the public defender's office showed counsel failed to consult with him regarding his claims of error.

¶ 36    Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), which applies to cases involving guilty pleas, provides:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings."

Strict compliance with the certificate requirement of Rule 604(d) is required. *People v. Janes*, 158 Ill. 2d 27, 35 (1994). When counsel does not strictly comply, the matter must be remanded for new postplea proceedings in full compliance with Rule 604(d). *Id.* "[E]ven when the certificate is valid on its face, a remand will be necessary if the record refutes the certificate." *People v. Winston*, 2020 IL App (2d) 180289, ¶ 14.

¶ 37    In the instant case, the record does not refute counsel's facially valid Rule 604(d) certificate. While defendant orally asserted at the *Krankel* inquiry that witnesses were unable to attend his sentencing hearing because counsel told them the wrong date, the record is silent as to

whether defendant told counsel prior to the inquiry that he wanted to raise this claim. Thus, we cannot infer from counsel's failure to include the claim in a postplea motion that she failed to consult with defendant concerning his contentions of error or amend the motion so as to adequately present the defects in the plea and sentencing proceedings.

¶ 38 Similarly, defendant's general comment at the *Krankel* inquiry about the lack of communication from the public defender's office did not rebut his counsel's specific assertion in the Rule 604(d) certificate that she consulted with defendant concerning his claims of error in the entry of the guilty plea or the sentence. Defendant did not specify when the communication problems with the public defender's office occurred. Also, it is clear from the claims raised in the motion to withdraw the guilty plea that counsel consulted with defendant concerning his contentions of error prior to filing the motions, as counsel included claims based on matters outside the record.

¶ 39 2. *Combined Hearing*

¶ 40 Defendant also argues he was deprived of his right to counsel where the trial court denied his motion to withdraw the guilty plea at a combined *Krankel* inquiry and hearing on the merits of the motion without obtaining a waiver of counsel. Defendant acknowledges that he was not entitled to the representation of counsel during the *Krankel* inquiry but asserts that he was entitled to be represented by counsel during the hearing on his motion to withdraw the guilty plea. Defendant contends he was effectively unrepresented by counsel during the entire combined hearing because defense counsel did not say anything other than noting that she had filed a motion to reconsider the sentence as well as a motion to withdraw the plea.

¶ 41 While a defendant is not entitled to be represented by counsel during a preliminary *Krankel* inquiry, a defendant is entitled to the representation of counsel during the

proceedings on a motion to withdraw a guilty plea. See *People v. Cabrales*, 325 Ill. App. 3d 1, 6 (2001); see also *People v. Vaughn*, 200 Ill. App. 3d 765, 771 (1990) ("[A] defendant is entitled to assistance of counsel in the preparation of his motion to withdraw a guilty plea, which is a critical stage of the proceedings ***."). Whether a defendant was deprived of his right to counsel is a legal question subject to *de novo* review. *People v. Lesley*, 2018 IL 122100, ¶ 30.

¶ 42    Here, defendant was not deprived of his right to counsel during the hearing on the postplea motions. Counsel prepared and filed the postplea motions on defendant's behalf. The motions asserted defendant's *pro se* allegations of ineffective assistance of counsel, as well as other claims. Counsel appeared with defendant at the hearing where the court conducted the preliminary *Krankel* inquiry and ruled on the postplea motions. While counsel did not present evidence or argument at the hearing, this did not constitute a deprivation of defendant's right to counsel. Rather, it was tantamount to counsel standing on the motions she had filed. Because defendant was represented by counsel throughout the postplea proceedings, the trial court did not err in failing to obtain a waiver of counsel from defendant.

¶ 43    We acknowledge that the procedure employed by the trial court in this case was somewhat muddled. It would have been preferable for the court to make an explicit finding that the appointment of new counsel was not warranted before it ruled on the motion to withdraw the guilty plea. It also would have been preferable for the court to expressly offer defense counsel the opportunity to present evidence and argument before denying the motion. However, the court's ruling that the allegations of ineffective assistance were not "well taken" was an implicit finding that the appointment of new counsel was not warranted. Also, defense counsel did not request to present evidence or argument at the hearing, and the court did not affirmatively

prevent her from doing so. While there were shortcomings in the court's procedure in this case, they did not amount to a deprivation of defendant's right to counsel.

¶ 44                                    III. CONCLUSION

¶ 45          For the foregoing reasons, we affirm the judgment of the trial court.

¶ 46          Affirmed.

¶ 47          PRESIDING JUSTICE KNECHT, dissenting:

¶ 48          *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), is now a precedent of 37 years' duration. For inexplicable reasons, trial courts have failed to adopt a straightforward, linear procedure to conduct a *Krankel* hearing. In this case, the trial court was more interested in lecturing defendant about the gift he received by entering a plea than asking a few simple questions about his claim.

¶ 49          Defendant claimed two witnesses he expected to testify at his sentencing hearing were told the wrong date for the hearing and then were unable to testify. The trial court should have asked defendant: "Who are the witnesses?"; "What is their expected testimony?"; and "Did counsel's errors cause the absence of the witnesses?" The trial court did not ask counsel about this claim. The trial judge could not know whether those witnesses might have changed the sentencing outcome without inquiring as to the substance of their expected testimony.

¶ 50          We should no longer have to use the phrase "a minimally sufficient preliminary *Krankel* inquiry." I respectfully dissent.

- 14 -